**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HAZELL BROOKS, *et al*.,** | |
| Plaintiffs, | |
| v. | Case No. 19-cv-2065 (CRC) |
| **DISTRICT OF COLUMBIA**, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiffs in this case are three blind vending-facility operators.  They claim that the District of Columbia retaliated against them for bringing an earlier lawsuit challenging the District's administration of a federal program for visually-impaired commercial vendors in which they participate.  This Court dismissed Plaintiffs' prior suit in March 2019.  The District has moved to stay this case pending resolution of Plaintiffs' appeal of that dismissal to the D.C. Circuit.  Because the Circuit's decision will at least inform the present suit, if not preclude it altogether, the Court will grant the motion.

### I.     Background

Plaintiffs Hazell Brooks, Derwin Patten, and Roy Patten operate vending facilities in several federal buildings under the Randolph-Sheppard Vending Facilities Program.  In their first suit, which the Court will refer to as Brooks I, they alleged that the District of Columbia had discriminated against them based on their blindness.  The allegations of discrimination were based on purported "discriminatory inspections" of Plaintiffs' facilities, the District's "failure to provide auxiliary aids for blind vendors," and "excessive or unauthorized deductions, set asides, and other such levies and expenses on vending . . . operations."  Op. at 2.

Although Plaintiffs couched their claims in terms of several federal anti-discrimination statutes, the Court concluded that the claims were subject to the mandatory exhaustion requirements of the Randolph-Sheppard Act.  Id. at 5.  Before filing a lawsuit in federal court, the Randolph-Sheppard Act requires that vendors bring complaints before the state licensing agency for an evidentiary hearing.  As part of its implementation of the Randolph-Sheppard program, the District "provides for an [i]nformal due process hearing before the D.C. Office of Administrative Hearings (OAH)."  Id.  at 3.  Only after exhausting this administrative remedy may an aggrieved party "appeal . . . either to the D.C. Court of Appeals . . . or to the United States Secretary of Education."  Id.  The Court granted the District's motion to dismiss because Plaintiffs failed to comply with these mandatory exhaustion procedures.  Id. at 4, 13.  Plaintiffs have appealed this ruling to the D.C. Circuit.

In this case, which the Court will refer to as Brooks II, the same Plaintiffs have sued the District for illegal retaliation stemming from the litigation in Brooks I.  Many of the claims in the complaint appear to arise from the same purported deficiencies in the District's administration of the Randolph-Sheppard program that Plaintiffs complained of in Brooks I.  The complaint further alleges that Plaintiff Derwin Patten initiated and litigated a Randolph-Sheppard complaint before OAH from July 2017 to April 2018, which ultimately resulted in an order allowing the District "to terminate [his agency] operating agreement."  Am. Compl. at 18.  Plaintiffs maintain that the District sought to retaliate against Patten by "engaging in a prolonged and continuous course of conduct that delayed" Patten's acquisition of a new operating agreement that would allow him to acquire a new vending facility, leaving him without a source of income for about a year.  Id. at 19.  The District did so, according to Plaintiffs, by (1) delaying the administration of the training required for a new operating agreement and (2) failing to provide necessary

accommodations for Patten's disability.  Plaintiffs further allege that when Patten finally received a new operating agreement for a vending facility at a federal building, he was offered "a written agreement that, because of [his] blindness, [he] could not see or read."  Id. at 24.  That agreement allegedly "waived, mooted, or compromised" his OAH appeal pending before the D.C. Court of Appeals.  Id.

Rather than respond to Plaintiffs' complaint on the merits, the District filed a motion to stay this case pending the appeal of Brooks I.  The City argues that some of Plaintiffs' new claims are likely to be precluded because these claims arise from the same circumstances present in Brooks I, and should have been brought in that case.  The District also contends that the D.C. Circuit's ruling in Brooks I will "provide guidance" on "the scope of mandatory exhaustion under the Randolph-Sheppard Act," guidance that would help this Court evaluate any non-precluded claims.  Mot. to Stay at 2.  Finally, the District observes that if Brooks I is remanded, this Court could consolidate it with this case.  For these reasons, the District argues that a stay would further the interests of efficiency and judicial economy.

Plaintiffs respond that the indefinite nature of the appeal in the D.C. Circuit makes a stay that is contingent upon its resolution inappropriate, especially considering the immediate consequences Plaintiffs currently face.  Plaintiffs further assert that the District's unnecessary delays in administering the Randolph-Sheppard program have left Patten "without a livelihood." Opp'n at 7–8.

In reply, the District portrays Plaintiffs' concern over indefinite delay as one of their own making, given that Plaintiffs appealed Brooks I in the first place.  Reply at 4–5.  And it disputes Plaintiffs' allegation of ongoing injury, representing that Patten is still a Randolph-Sheppard vendor and was recently selected to run a vending facility at the State Department.

## II.      Legal Standard

Courts have broad discretion to grant a motion to stay because "the power to [do so] is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254–55 (1936); see also Clinton v. Jones, 520 U.S. 681, 706 (1997) (same).  In exercising this discretion, this Court "must weigh competing interests and maintain an even balance."  Dellinger v. Mitchell, 442 F.2d 782, 786 n.7 (D.C. Cir. 1971).  The moving party bears the burden of establishing "a clear case of hardship or inequity in being required to go forward."  Landis, 299 U.S. at 255.

 "A stay may be warranted when . . . a prior case which may have preclusive effect over the instant proceedings is pending on appeal."  Univ. of Colo. Health at Mem'l Hosp. v. Burwell, 233 F. Supp. 3d 69, 87 (D.D.C. 2017).  That is especially so when it is likely that the outcome of the appeal of the first case will "preclude the entire second action."  18A C. Wright & A. Miller, Fed. Prac. & Proc. § 4433 (3d ed. 2019) (emphasis added).  A stay may also be appropriate where a pending appeal would "provide guidance on a question of law" that is dispositive to the matter before the district court.  Fonville v. D.C., 766 F. Supp. 2d 171, 173 (D.D.C. 2011).

## III.     Analysis

The high likelihood of both issue and claim preclusion in this case establishes sufficient "hardship or inequity in being required to go forward" to merit a stay.  Landis, 299 U.S. at 255. The issue whether Plaintiffs were required to exhaust administrative remedies under the Randolph-Sheppard Act—which was previously decided by this Court in Brooks I—is again

implicated here.[1]  Because this issue was necessarily decided in <u>Brooks I</u>, it is unlikely that it

could be re-litigated in this case if the Court's ruling in <u>Brooks I</u> is upheld by the Circuit.

Further, the present claims may also be barred by claim preclusion, because they arguably stem

from the same occurrences forming the basis of <u>Brooks I</u> (i.e., the District's alleged treatment of

the same plaintiffs in its administration of the Randolph-Sheppard program).  The claims that

Patten's prior OAH case resulted in retaliation by the District and the unintentional waiver of his

right to appeal the OAH decision also appear to arise from the same occurrences alleged in

<u>Brooks I</u>.  Because these claims could have been raised during the first suit but were not, they

may well be precluded here.

 Even if the Circuit's decision does not effectively bar Plaintiffs' present claims

altogether, the Circuit's interpretation of the Randolph-Sheppard Act can be expected to

"otherwise provide instruction" on any non-precluded issues.  <u>Burwell</u>, 233 F. Supp. 3d at 88.

The combination of these two factors readily tips the balance in favor of a stay, especially given

that Plaintiffs themselves initiated the appeal.

### IV.    Conclusion

 Because this case contains claims and issues that may well be precluded by <u>Brooks I</u>, and

because this Court will be required to abide by either an affirmance or reversal of its

interpretation of the Randolph-Sheppard Act's exhaustion requirements in <u>Brooks I</u>, Defendant

has demonstrated sufficient "hardship" in proceeding with <u>Brooks II</u>.  A stay is therefore

appropriate.

---

[1] <u>Brooks I</u> was dismissed on a Rule 12(b)(1) motion for lack of subject-matter jurisdiction due to Plaintiffs' failure to exhaust administrative remedies, which constitutes a final decision on the merits for both claim and issue preclusion purposes. <u>See</u> <u>Op.</u> at 2, 13.

Accordingly, it is hereby

**ORDERED** that [ECF No. 7]  Defendant's Motion to Stay Proceedings is GRANTED, and that the case be stayed pending resolution of the appeal of Case No. 18-cv-732 in the D.C. Circuit.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: November 6, 2019
     _____