UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HAZELL BROOKS**, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>**DISTRICT OF COLUMBIA**,<br><br>        Defendant. | Case No. 19-cv-2065 (CRC) |

### MEMORANDUM OPINION

Plaintiffs, three blind vending-facility operators, renew their challenge to the District of Columbia's administration of a federal program that gives preferences to visually impaired vendors. They concede that three of their claims are precluded under this Court's decision in Brooks v. District of Columbia ("Brooks I"), 375 F. Supp. 3d 41 (D.D.C. 2019), aff'd sub nom. Patten v. District of Columbia, 9 F.4th 921 (D.C. Cir. 2021). That leaves only Plaintiff Derwin Patten's claims challenging the District's two purported delays in offering him a new vending-facility operating agreement. Because Patten failed to exhaust his administrative remedies and is precluded from arguing that exhaustion is not required, the Court will grant the District's motion to dismiss his claims.

I.   **Background**

The Court described much of the relevant background in Brooks I, so it provides only a summary of the relevant details here.

The Randolph-Sheppard Act ("RSA" or "Act"), 20 U.S.C. § 107(a), gives licensed blind persons priority to operate vending facilities located on federal property. Brooks I, 375 F. Supp. 3d at 43 (citing § 107(b)). It also entitles them to a percentage of all income generated by

vending machines located on that property, even if those machines are not operated by program participants. Id. (citing § 107d-3).

The Secretary of Education has designated the Department on Disability Services, Rehabilitation Services Administration ("DDS-RSA") to administer the Act within the District of Columbia. Id. The agency manages day-to-day operations, including by licensing individual vendors, identifying locations for vending facilities, and monitoring compliance with the program's rules and regulations. Id. at 43–44 (citing 20 U.S.C. § 107a(b)).

Under the Act's administrative grievance procedure, a licensee "who is dissatisfied with any action arising from the operation or administration of the vending facility program" is entitled to a "full evidentiary hearing" by the state licensing agency ("SLA"). 20 U.S.C. § 107d-1(a); see also id. § 107b(6) (requiring SLAs to provide "dissatisfied" licensees with "an opportunity for a fair hearing"); 34 C.F.R. § 395.13 (same). To implement these requirements, the District of Columbia provides for an "[i]nformal due process hearing before the D.C. Office of Administrative Hearings (OAH)." D.C. Mun. Reg. tit. 29, § 218.2(b)(3). An aggrieved licensee dissatisfied with the results of the OAH hearing "may appeal . . . either to the D.C. Court of Appeals . . . or to the United States Secretary of Education." Id. § 218.2(c). If the licensee elects the latter route, the Secretary submits the complaint to an arbitration panel pursuant to 20 U.S.C. § 107d-1(a), whose decision is "final and binding" except as subject to judicial review under the Administrative Procedure Act. Id.; id. § 107d-2(a); 34 C.F.R. § 395.13(c). Exhaustion is mandatory before a licensee may seek judicial review in federal court. Brooks I, 375 F. Supp. 3d at 45.

Plaintiffs Hazell Brooks, Derwin Patten, and Roy Patten are current or past participants in the District of Columbia's Randolph-Sheppard Vending Facilities Program ("RSVFP" or

"Program"). Id. at 44. In 2019, they brought claims under various antidiscrimination statutes challenging the District's administration of the Program, including "discriminatory inspections of blind vendors' facilities," "failure to provide adequate auxiliary aids for blind vendors," and "excessive or unauthorized deductions, set asides, and other such levies and expenses on vending machine" and "vending operations." Id. The Court dismissed Plaintiffs' claims because they failed to exhaust their administrative remedies. Id. at 49–50. The Court also denied Plaintiffs' motion for reconsideration, declining to consider two "entirely new legal theories" they attempted to raise. Brooks I, Order, ECF No. 37 at 2 (cleaned up). Plaintiffs appealed to the D.C. Circuit. The D.C. Circuit affirmed the dismissal, agreeing that the RSA's mandatory exhaustion provision covered Plaintiffs' claims and that Plaintiffs had failed to exhaust their administrative remedies. Patten, 9 F.4th at 925–26.

Plaintiffs then filed a new complaint in July 2019. Counts 1–3 of the amended complaint raised three of the same claims brought in Brooks I. Am. Compl., ECF No. 1-3, at ¶¶ 7–22. Plaintiffs now framed those claims as retaliation against them for filing Brooks I, however, rather than as unlawful discrimination. Id.

Plaintiff Derwin Patten also brought additional claims. In Counts 4–6, Patten alleged as follows: From July 2017 through April 2018, he litigated a case OAH opposing the termination of his operating agreement to maintain his vending facility at the Defense Intelligence Agency ("DIA"). Am. Compl. ¶ 24. DDS-RSA ultimately terminated Patten's operating agreement and shuttered his DIA facility in April 2018. Am. Compl. ¶ 28. Then, allegedly in retaliation for Patten's involvement in Brooks I and his litigation before OAH, DDS-RSA "substantially delayed" the online courses that Patten needed to complete before obtaining a new operating agreement and vending facility. Id. ¶ 29(a). Patten further claimed DDS-RSA did not provide

3

him with a human reader or auxiliary aids to assist him in completing the required online coursework. Id. ¶ 30(b). He also alleged that even after he completed the online courses, DDS-RSA "engag[ed] in a prolonged and continuous course of conduct that delayed for about a year" the offer of a new operating agreement and vending facility, until March 2019. Id. ¶¶ 35(b), 36(d). As a result of this delay, Patten purportedly "lost substantial sums in profits, earnings or income from his Randolph-Sheppard vending operations after April 6, 2018." Id. ¶ 39. Patten alleged that this retaliatory delay violated the Americans with Disabilities Act ("ADA"), the D.C. Human Rights Act, and the Rehabilitation Act of 1973. Id. ¶¶ 40(b), 42(a), 44(a).

In Counts 7–9, Patten alleged that DDS-RSA finally offered him a new operating agreement for a mini-mart vending facility at the Thomas P. O'Neill Jr. Federal Building in March 2019. Id. ¶ 47(a). Patten claims that he could "not see or read" the proposed agreement and did not understand its "legalese." Id. ¶ 47(c). Nevertheless, he signed the agreement, though he claims that DDS-RSA did not inform him that the agreement "possibly waived, mooted, or compromised" his appeal in the OAH litigation. Id. ¶ 47(d). When Patten learned of the effects that signing the new operating agreement had on his OAH appeal, he "immediately repudiated" the agreement. Id. ¶ 49. Patten alleges that after his repudiation, DDS-RSA again delayed his acquisition of a new operating agreement so that he once again lost "substantial sums in profits, earnings or income." Id. ¶¶ 51–52. Patten claims this second allegedly retaliatory delay also violated the ADA, the D.C. Human Rights Act, and the Rehabilitation Act. Id. ¶¶ 53, 55, 57.

The Court initially stayed proceedings pending the Court of Appeals' resolution of Plaintiffs' appeal in Brooks I. Then, after the Court of Appeals affirmed the dismissal in Brooks I, the District moved to dismiss all claims. Plaintiff Derwin Patten opposed. The Court will grant the motion to dismiss.

4

## II. Legal Standards

The District of Columbia has moved to dismiss the case under Rule 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct." Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014) (citation omitted); see also Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F.Supp.2d 191, 196 (D.D.C. 2002).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up). Although a complaint need not provide "detailed factual allegations" to withstand a 12(b)(6) motion, it must offer "more than labels and conclusions." Twombly, 550 U.S. at 555.

### III. Analysis

#### A. Counts 1–3

Counts 1–3 repackage the claims already disposed of in Brooks I and are therefore precluded by this Court's prior decision. Patten concedes as much in his opposition. Opp'n at 1. The Court will accept Patten's concession and dismiss Counts 1–3.

#### B. Counts 4–9

##### 1. Claim Preclusion

That leaves Patten's claims challenging DDS-RSA's two alleged delays in offering him a new operating agreement. The District first contends that these claims are also precluded by Brooks I. The Court disagrees.

Res judicata "bars successive lawsuits if a prior litigation (1) involving the same claims or causes of action, (2) between the same parties or their privies, (3) ended in a final, valid judgment on the merits, (4) entered by a court of competent jurisdiction." Ashbourne v. Hansberry, 894 F.3d 298, 302 (D.C. Cir. 2018). Whether successive cases involve the same cause of action "turns on whether the[ ] [causes of action] share the same nucleus of facts." Id. (alteration in original) (citation omitted).

Contrary to the District's position, Patten's current claims do not share the same nucleus of facts as the original claims in Brooks I. The claims in Brooks I concerned the District's allegedly discriminatory treatment of thirty blind vendors, including by subjecting the plaintiffs to "illegal" food inspections, failing to provide them with accommodations or auxiliary aids so they could read communications from the District, and charging "excessive vending machine deductions, set asides, and other such levies and expenses." Brooks I Am. Compl., ECF No. 8, ¶¶ 9(c), (d), (e). The only specific allegations concerning Derwin Patten related to inspections of

his Defense Intelligence Agency vending facility from June 2016 to March 2017.  Id. ¶ 12(d).  In inspection reports, the District alleged that Patten's facility violated the D.C. Food Code because of the presence of dust, empty boxes, and other infractions.  Id. ¶ 12(e).  These violations "warranted termination of plaintiff Derwin Patten's DIA vending facility."  Id.

The Brooks I complaint does not indicate whether Patten's DIA vending facility was in fact closed, however, or discuss what happened next.  The timing of the Brooks I complaint explains why.  According to the amended complaint in this case, OAH terminated Derwin Patten's DIA operating agreement in April 2018.  Am. Compl. ¶ 33.  The District's first alleged delay in offering him a new operating agreement took place over the next year, until March 2019.  Id. ¶¶ 38, 47(a).  And after Patten repudiated the new operating agreement sometime in April 2019, he says the District again delayed offering him a new agreement.  Id. ¶¶ 48–49, 51.  The events giving rise to Patten's claims in Counts 4–9 thus took place from about April 2018 through and after April 2019.  The Brooks I complaint, however, was filed on March 30, 2018, and the amended complaint was filed in May 2018.  Patten's claims at issue here therefore accrued *after* the filing of the amended complaint in Brooks I, so they are not precluded.

The authority cited by the District does not change that conclusion.  In Ashbourne v. Hansberry, the plaintiff brought Title VII claims in an administrative proceeding and several other challenges relating to her employment termination in federal court.  894 F.3d at 300.  Both sets of claims "share[d] a common genesis: the termination of her federal employment and alleged adverse employment actions tied up with that termination."  Id. at 302–03.  Thus, the adjudication of the plaintiff's federal-court claims barred her Title VII claims.  Id. at 305.  Similarly, in Sheptock v. Fenty, 707 F.3d 326 (D.C. Cir. 2013), the precluded claims and those that had already been adjudicated both "flow[ed] directly from the closure of" a homeless

7

shelter.  Id. at 334.  Here, on the other hand, as just explained, Patten's claims arise out of events that took place after the filing of the complaint in Brooks I.  His claims thus could not "have been included in the earlier litigation" and accordingly are not precluded.  Ashbourne, 894 F.3d at 303.[1]

    *2. Issue Preclusion*

The District next points to the fact that, just as in Brooks I, Patten did not exhaust his administrative remedies here.  Patten does not dispute that he failed to exhaust his administrative remedies for all claims.  See Am. Compl. ¶ 50; Opp'n at 8.  Instead, he contends that exhaustion is not required under the Randolph-Sheppard Act.  Opp'n at 8.  The District responds that the Court already decided this issue in its favor in Brooks I, and Patten is precluded from raising it again.  On this issue, the District is correct.

Collateral estoppel, or issue preclusion, bars relitigation of an issue of fact or law that was actually decided in a prior case when (1) "the same issue now being raised [has] been contested by the parties and submitted for judicial determination in the prior case," (2) "the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case," and (3) "preclusion in the second case [does] not work a basic unfairness to the party bound by the first determination."  Hall v. Clinton, 285 F.3d 74, 80 (D.C. Cir. 2002) (citation omitted).

The first two requirements are satisfied without question here.  Plaintiffs vigorously contested whether they were required to exhaust their RSA claims in Brooks I, arguing that they did not in fact allege claims under the RSA, that the District had waived the exhaustion

---

[1] Although Plaintiffs' Motion to Alter or Amend the Judgment in Brooks I mentions that DDS-RSA offered a new operating agreement to Patten that he could not read, that event took place a "few weeks" prior to the filing of the motion in April 2019.  Mot. to Alter or Amend J., ECF No. 34, at 2.  Thus, that event did not and could not possibly have formed the basis of the claims alleged in the complaint.

requirement and that OAH lacked jurisdiction to hear RSA claims. See Brooks I Opp'n, ECF No. 21, at 12–22; Brooks I Praecipe, ECF No. 28, at 1–2. The Court rejected these arguments, holding that Plaintiffs' claims "go directly to the administration of the Act and are properly subject to its exhaustion requirements." Brooks I, 375 F. Supp. 3d at 47. The Court also concluded that "OAH [] has jurisdiction over cases arising under the RSA." Id. at 49. Because Plaintiffs had failed to exhaust, the Court dismissed all claims, and the D.C. Circuit affirmed on that basis. Id. at 49–50; Patten, 9 F.4th at 929.

Patten acknowledges that this Court's prior decision "decided the question of OAH jurisdiction over Randolph-Sheppard cases[.]" Opp'n at 34. But he contends that applying issue preclusion to him would "work a basic unfairness." Hall, 285 F.3d at 80 (citation omitted). He bases his argument on: (1) materials acquired through FOIA after Brooks I was decided and (2) an argument forfeited in Brooks I that OAH's jurisdiction to hear RSA claims violates the separation of powers in the District of Columbia's government.

     i. FOIA Materials

Patten first argues issue preclusion should not apply because materials newly acquired through FOIA indicate that "the District misled" the Court in Brooks I "about whether an unidentified OAH chief judge received a request for Randolph-Sheppard and other DDS-RSA cases to be placed within the jurisdiction of OAH" and "whether [the] OAH chief judge actually extended his or her agency's jurisdiction to Randolph-Sheppard and other DDS-RSA cases." Opp'n at 34.

Recall that in Brooks I, Plaintiffs argued that exhaustion of their claims would have been futile because OAH lacks jurisdiction over RSA claims. Both this Court and the D.C. Circuit rejected that argument. This Court reasoned that the OAH Establishment Act, although not

referencing RSA claims by name, "enumerates the types of cases over which the OAH has jurisdiction, including cases arising under the jurisdiction of the Department of Human Services ("DHS"), D.C. Code § 2-1831.03(a)(2), which historically administered the District's RSVFP[.]" Brooks I, 375 F. Supp. 3d at 49. The Court further noted that although the District passed legislation in 2006 transferring authority over the RSA, which administers the RSVFP, from DHS to the Department on Disability Services, OAH understood that it would "continue conducting hearings regarding the RSA program, and OAH's Chief Administrative Law Judge approved this request under D.C. Code § 2-1831.03(c)." Id. (citing M. F-G v. D.C. Dep't on Disability Servs., Rehab. Servs. Admin., No. DS-P-08-102477, 2009 WL 2491330, at *n.3 (D.C. OAH July 7, 2009)).

The D.C. Circuit affirmed, emphasizing that Plaintiffs had not argued that OAH had ever "disclaimed jurisdiction over RSA claims," while the District, in contrast, "cite[d] many RSA cases heard by the OAH, including some brought by the plaintiffs." Patten, 9 F.4th at 929.[2] The Circuit also relied on a recent D.C. Court of Appeals case reserving the issue of whether OAH may properly hear RSA claims while "stress[ing] that the OAH continues to decide RSA cases" and "expressly refus[ing] to 'upend' that "practice.'" Id. (citing Patten v. D.C. Dep't on Disability Servs., 248 A.3d 116, slip op. at 7–8 (D.C. 2021) (unpublished table decision)). The Circuit was thus unpersuaded by Plaintiffs' objection, which "the [D.C.] Court of Appeals ha[d] declined to adopt" and "r[an] counter to longstanding OAH practice in RSA cases." Id.

Following this Court's ruling in Brooks I, Plaintiffs filed three separate FOIA requests seeking records related to the OAH Chief Administrative Law Judge's purported approval of

---

[2] Indeed, the amended complaint in this case references Plaintiff Derwin Patten's other litigation before OAH. See, e.g., Am. Compl. ¶ 30.

OAH's request to keep hearing RSA claims.  The first request, in May 2019, sought OAH records "whereby the OAH Chief Administrative Law Judge granted approval . . . for OAH to hear cases filed by anyone, (1) against DDS, (2) against DDS-RSA, or (3) against the D.C. Randolph-Sheppard Vending Facilities Program."  Opp'n, Ex. 3 ("Response to May 2019 FOIA Request").  The second request, in June 2019, sought "[an] email search of the OAH Chief Administrative Law Judge and General Counsel for approval of a request for OAH to hear cases filed against the D.C. Department on Disability Services, Rehabilitation Services Administration or to hear cases filed against the D.C. Randolph-Sheppard Vending Facilities Program."  Id., Ex. 5 ("Response to June 2019 FOIA Request").  The final request, in August 2019, sought the case file in M. F-G v. D.C. Dep't on Disability Servs., Rehab. Servs. Admin., the case which the Court had cited for the proposition that the OAH Chief Administrative Law Judge approved OAH's request to retain jurisdiction over RSA claims after administration of the RSA program was transferred to DDS from DHS in 2007.  Id., Ex. 6 ("August 2019 FOIA Request").

       Patten now contends that the materials received in response to these three FOIA requests indicate that the OAH Chief Administrative Law Judge never approved OAH's request to retain jurisdiction over RSA claims after the 2007 transfer.  His argument fails for two reasons.  First, the D.C. Circuit did not rely on the OAH Administrative Law Judge's approval to reject Plaintiffs' futility argument.  So even if the records obtained through FOIA flatly contradicted the existence of such an approval, that would not change the Circuit's holding that exhaustion would not have been futile.

       Second, the records submitted by Patten are inconclusive at best and largely irrelevant to whether an OAH Administrative Law Judge approved OAH's request to continue hearing RSA claims after the 2007 transfer.  The materials include an unsigned memorandum of understanding

between the OAH Chief Judge and DDS referencing cases that would be "referred" by DDS to "OAH for adjudication."  Response to May 2019 FOIA Request, Memorandum of Understanding.  Contrary to Patten's argument, the mere fact that this memorandum was never issued neither helps nor hurts his position.  The failure to issue the memorandum could indicate that OAH lacked jurisdiction over RSA claims, but it could also suggest that the memorandum was "unnecessary" because OAH had jurisdiction without it.  Reply at 9 n.5.  The materials further include statutes and regulations already cited in Brooks I.  See, e.g., Department on Disability Services Establishment Act of 2006, D.C. Code § 7-761.09; D.C. Code § 2-1831.03(a).  Patten also submits a copy of the OAH decision in M. F-G v. D.C. Department on Disability Services, Rehabilitative Services Administration, Opp'n, Ex. 7, and a resolution to approve Tyrone Butler as Chief Administrative Law Judge of OAH, the relevance of which is unclear, id., Ex. 4.  Nothing in these materials contradicts the observation in M. F-G v. DDS-RSA that OAH's Chief Administrative Law Judge approved OAH's request to keep hearing RSA claims after 2007.

But even if OAH's inability to produce documentation of this approval were viewed as meaningful, that would not change the bottom line.  Without considering whether an OAH judge formally approved its jurisdiction over RSA claims, the D.C. Circuit relied on "longstanding OAH practice in RSA cases" to reject Plaintiffs' futility argument.  Patten, 9 F.4th at 929.  OAH has continued to hear RSA claims even after DDS assumed control over the RSA program.  Id.  Patten therefore had no reason to believe that OAH would decline jurisdiction over his claims, so exhaustion would not have been futile.  The newly acquired materials say nothing about that longstanding practice and have no effect on the Circuit's holding.  Applying issue preclusion to Patten therefore works no unfairness here.

ii. Separation of Powers

Patten next argues that D.C. Code § 2-1831.02 violates the separation of powers created by Congress in the D.C. Home Rule Act. Plaintiffs made this same argument in their motion for reconsideration in Brooks I. Mot. to Alter or Amend J., ECF No. 34, at 11–16. The Court did not address the argument there because Plaintiffs had not raised it previously. Order Denying Motion for Reconsideration, ECF No. 37, at 2–3. Patten now wants a second bite at the apple, but he cannot rely on this once-forfeited argument to escape issue preclusion.

Patten's new argument is "bound by the court's previous finding of issue preclusion." Ponte v. FDIC, No. 24-CV-2379 (APM), 2024 WL 4730602, at *6 (D.D.C. Oct. 11, 2024). That is so because "once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992) (citing Restatement (Second) of Judgments § 27 cmt. c at 253 ("if previously litigated 'issue was one of law, new arguments may not be presented to obtain a different determination of that issue.'")). "Circuit precedent dictates that '[p]reclusion applies if a later argument 'is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it could have been raised.'" Ponte, 2024 WL 4730602, at *6 (alteration in original) (citing GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia, 822 F.3d 598, 608 (D.C. Cir. 2016)). Thus, Patten is precluded from raising the separation-of-powers argument that Plaintiffs forfeited in Brooks I.

3. Merits

Even if the Court did not apply issue preclusion to Patten here, exhaustion is required on the merits under Patten v. D.C., 9 F.4th at 929. As already discussed, Patten squarely held that "the RSA exhaustion provision is mandatory for claims to which it applies." Id. at 925. The

Court of Appeals went on to explain that "[t]he exhaustion requirement thus applies so long as the aggrieved parties are licensees and the challenged actions involve operation or administration of the program." Id. Patten's claims relating to the delays in his operating agreement plainly challenge the "operation or administration" of the RSA program and were subject to mandatory exhaustion under binding Circuit precedent. Id.

Patten's only response is the futility argument that was rejected by this Court and the D.C. Circuit in the prior litigation. As already explained, the proffered FOIA materials, even on Patten's view of them, do not affect the D.C. Circuit's holding that no futility exception applies because Plaintiffs "ha[d] not shown that the OAH would 'certainly, or even probably,' have refused to consider their claims." Patten, 9 F.4th at 929. And no separation-of-powers concern prevented the Circuit from relying on the "longstanding OAH practice" of deciding RSA cases to conclude that Plaintiffs were required to exhaust their claims. Id. The D.C. Court of Appeals similarly refused to "upend" OAH's practice of hearing RSA claims even after "the transfer of RSA (and the Randolph-Sheppard program) from DHS to DDS in 2007." Patten v. D.C. Dep't on Disability Servs., slip op. at 7–8.

Patten offers no new evidence or argument suggesting that OAH would have declined jurisdiction over his claims here, either. Since exhaustion thus would not have been futile, Patten's conceded failure to exhaust dooms his claims. See Am. Compl. ¶ 50. For that reason, too, the Court will grant the motion to dismiss.

**IV. Conclusion**

For these reasons, the court will grant Defendant's Motion to Dismiss and deny Plaintiff's Motion for Hearing. A separate Order accompanies this opinion.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>December 3, 2024</u>